IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 24-31596 |
| MMA LAW FIRM, PLLC | § | |
| | § | |
| DEBTOR | § | |
| | § | |
| MMA LAW FIRM, PLLC | § | ADVERSARY NO. |
| | § | |
| Plaintiff | § | |
| v. | § | |
| | § | |
| MORRIS BART, LLC | § | |
| | § | |
| Defendant | § | |

## COMPLAINT

MMA LAW FIRM, PLLC, Plaintiff and/or Debtor, files this Complaint against Morris Bart, LLC, pursuant to FED. R. BANKR. P. 7001, requesting actual and punitive damages, and respectfully shows the Court as follows:

### JURISDICTION, VENUE AND PARTIES

1.  This is an adversary proceeding brought by the Debtor for violation of the automatic stay under section 362 of title 11 of the United States Bankruptcy Code.

2.  This Court has subject matter jurisdiction over this adversary proceeding, pursuant to 28 U.S.C. §§ 157 and 1334(b).

3.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2) and this Court may enter a final order consistent with these statutes and Article III of the United States Constitution.

4.  Venue is proper in the Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), pursuant to 28 U.S.C. § 1409.

5.  MMA Law Firm, PLLC is the Debtor in Case No. 24-31596 pending in the Southern District

of Texas and can be served through its undersigned counsel.

6. Morris Bart, LLC can be served with this Complaint and summons through its registered agent Morris Bart, III at 601 Poydras Street, 24th Floor, New Orleans, LA 70130.

7. The Plaintiff hereby states that it consents to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## FACTS

### REPRESENTATION OF STORM VICTIMS

8. MMA Law Firm, PLLC ("**Debtor**") is a litigation law firm based in Texas.

9. After hurricanes Laura, Delta and Ida, the Debtor represented thousands of storm victims with property-damage claims against their insurance companies (**"MMA Clients"**).

10. The Debtor initiated claims and filed thousands of lawsuits on behalf of the MMA Clients throughout Louisiana, Texas and Mississippi on a contingency fee basis (**"MMA Cases"**).

11. In March 2023, a Louisiana District Court suspended the law license of the Debtor's former attorneys, who managed the Debtor's New Orleans office (the, **"Suspension"**).

12. In March 2023, the Debtor informed all of the MMA Clients of the Suspension and the transition to new counsel, explaining the Debtor's collaboration new firms to manage their cases.

13. During this time, Morris Bart, LLC (**"Morris Bart"**) acquiring thousands of MMA Cases and executed new contingency fee agreements with former MMA Clients (**"MB/MMA Cases"**).

14. On August 1, 2023, Morris Bart filed a lawsuit against the Debtor seeking a declaratory judgment that the Debtor was not entitled to fees in the MB/MMA Cases (the **"Lawsuit"**).

15. The Debtor subsequently filed a Motion to Dismiss the Lawsuit which was granted on October 16, 2023.

16. Despite failing in litigation, Morris Bart continued filing individual motions in Louisiana District Courts (**"Motions to Exclude"**) in an attempt to block the Debtor's claims to fees and costs in the MB/MMA Cases.

**BANKRUPTCY FILED AND MORRIS BART CONTINUES ITS PURSUIT AGAINST MMA**

17. On April 9, 2024, the Debtor filed a Chapter 11 bankruptcy petition (**"Chapter 11 Case"**).

18. The Debtor disclosed claims against Morris Bart in its bankruptcy schedules, asserting entitlement to attorney's fees and expenses related to MB/MMA Cases.

19. On April 12, 2024, the Bankruptcy Noticing Center notified Morris Bart of the Debtor's bankruptcy filing, followed by an email from the Debtor on April 23, 2024, that notified Morris Bart that the bankruptcy filing imposed a stay on any attempts to obtain the Debtor's property and included a list of all of the MB/MMA Clients.

20. Post-petition, and in violation of the automatic stay, Morris Bart filed multiple motions in Louisiana District Federal Court to exclude MMA as a payee on settlement checks.

21. On June 24, 2024, the Debtor initiated an Adversary Proceeding against Morris Bart for multiple causes of action, including violation of the automatic stay for the filing of the Motions to Exclude (Adv. Case No. 24-03127) (**"First Adversary"**).

22. On June 24, 2024, the Debtor filed an Emergency Motion for Temporary Restraining Order in the Pending Adversary (**"TRO"**).

23. Morris Bart filed a Response to the TRO and argued that an injunction was not necessary because a) it withdrew the pending Motions to Exclude; b) has no intention of attempting to prosecute any claims regarding the Debtor's estate; and c) an injunction would simply be one instructing Morris Bart to follow the law it has already complied with by withdrawing the pending Motions to Exclude.

24. On July 15, 2024, after a complete evidentiary hearing, this Court entered an Injunction that enjoined Morris Bart and its attorneys from the following (the **"Injunction"**):

   a. Taking any action to prosecute claims regarding the Debtor's interest or any entitlement to fees or costs in the MB/MMA Cases.

   b. Taking any actions or filing **any pleadings** in any of the MB/MMA Cases that requests or **would result in** the determination of the Debtor's interest in a fee or reimbursement of costs.

25. On July 23, 2024, Morris Bart appealed the Injunction. As of the date of this filing, the Injunction remains fully in effect and has not been stayed, modified, or reversed by the District Court.

### THE FOSKEY CASE IN LOUISIANA AND MAGISTRATE JUDGE NORTH

26. Sherry Foskey (**"Ms. Foskey"**) is a former client of the Debtor who retained the Debtor to pursue property-damage claims against her insurer, American Modern Property and Casualty Insurance Company, arising from hurricane-related losses (the **"Foskey Case"**). Following the Suspension, Ms. Foskey later retained Morris Bart to represent her in the same matter.

27. The Foskey Case was among the matters specifically identified by the Debtor to Morris Bart as an MB/MMA Case, and was included in the Debtor's April 23, 2024 correspondence explicitly advising Morris Bart of the applicability and effect of the automatic stay under 11 U.S.C. § 362.

28. On November 14, 2024, Morris Bart, appeared at a settlement conference in the Foskey Case before Magistrate Judge North and announced that negotiations between Ms. Foskey and the Insurance Co were successful and resulted in the settlement of her claims (the **"Settlement"**).

29. As a result of the Settlement, an Order of Dismissal was entered in the Foskey Case (**"Dismissal Order"**). The Dismissal Order from the District Court specifically stated that it had been advised by Magistrate Judge North that after a settlement conference, counsel for the parties have "**firmly agreed upon a compromise**".

30. The Dismissal Order further ordered that the Foskey Case would only be reopened upon good cause if the settlement is not consummated.

31. On December 2, 2024, roughly two weeks **after** the Foskey Case was settled before Magistrate Judge North, undersigned counsel for the Debtor and Mr. Probus, counsel for Morris Bart, appeared at

a status conference before District Judge Andrew Hanen to address the Court's questions regarding Morris Bart's Motion to Withdraw the Reference (**"District Court Hearing"**).

32. During the District Court Hearing, Judge Hanen specifically asked Mr. Probus if withdrawal of the reference would address his client's concerns regarding the fee dispute with the Debtor. He agreed that it would. At the conclusion of the District Court Hearing, Judge Hanen took the matters under advisement.

### *Ex-Parte* Settlement Conference With Magistrate Judge North and Order Obtained by Morris Bart

33. On December 5, 2024, only three days **after** the District Court Hearing (but before Judge Hanen ruled) Magistrate Judge North made a docket entry in the Foskey Case vacating the Dismissal Order with no explanation.

34. That same day, an Order was entered in the Foskey Case vacating the Dismissal Order (the **"Order Vacating"**).

35. Critically, no motion or request from any party appears on the docket seeking such relief, nor does the record reflect any hearing, briefing, or notice to the Debtor preceding the Order Vacating.

36. On December 12, 2024, without notice to the Debtor, without a hearing on the record, and in complete disregard of the Debtor's pending bankruptcy proceedings, Magistrate Judge North issued a highly prejudicial **ex parte** order addressing the Debtor's alleged misconduct, its interest in attorney's fees, and the applicability of this Court's Injunction to property of the estate (the **"Foskey Order"**).

37. The opening lines of the Foskey Order confirm that **improper ex parte communications** occurred, stating:

> "The undersigned recently held a settlement conference with the parties in this case. During that conference, an agreement in principle was reached, but certain impediments to final settlement arose that implicate the well-known and numerous misdeeds of Plaintiff's former counsel, MMA"

38. The Foskey Order went far beyond the scope of any matter before Magistrate Judge North which was Ms. Foskey's claims against her insurance company. It purported to adjudicate property rights belonging to the Debtor's bankruptcy estate, declared that the Debtor held no interest in any fees or costs in ANY cases pending in the Eastern District of Louisiana, and made sweeping factual findings adverse to the Debtor , all without jurisdiction, notice, or due process.

39. Needless to say, the Debtor did not and could not have appeared at this *ex-parte* conference with Magistrate Judge North as it had no knowledge that it occurred until Morris Bart filed Judge North's Order on the docket in the Debtor's bankruptcy case on December 13, 2024 (**"Notice"**).

40. Most tellingly, less than one hour before filing the Notice, counsel for Morris Bart communicated directly with undersigned counsel at 4:12 p.m. and made **no mention whatsoever** of the Foskey Case, the ex parte conference, or the newly entered Foskey Order—underscoring the deliberate and calculated effort to conceal these actions from the Debtor and this Court.

### MMA'S INFORMAL DISCOVERY ATTEMPTS WHERE REJECTED

41. Following entry of the Foskey Order, the Debtor immediately sought to understand how such an order could have been issued in direct conflict with this Court's Injunction and without any notice or participation by the Debtor**.**

42. The Debtor requested from Morris Bart basic information concerning the circumstances under which the Foskey Order was obtained, including whether any communications with Magistrate Judge North had occurred outside the Debtor's presence.

43. Morris Bart refused to provide any explanation or information. In written correspondence, counsel for Morris Bart flatly stated: *"Morris Bart will not provide the information requested without a court order requiring disclosure."* This refusal further underscored Morris Bart's ongoing efforts to conceal the nature and extent of its communications with Magistrate Judge North.

**EX PARTE COMMUNICATIONS REVEALED DURING BANKRUPTCY COURT HEARING**

44.On July 14, 2025, approximately seven months after the Foskey Order was issued by Magistrate Judge North, the Bankruptcy Court conducted a hearing on Morris Bart's Motion for Summary Judgment in the adversary proceeding (the **"MSJ Hearing"**).

45.During the MSJ Hearing, this Court questioned counsel for Morris Bart regarding the circumstances under which the Foskey Order had been obtained.

46.In response to the Court's inquiries, counsel for Morris Bart admitted that an attorney from Morris Bart firm had engaged in direct communications with Magistrate Judge North and asserted that these communications occurred "during a mediation" in the Foskey Case. Upon further questioning, counsel for Morris Bart confirmed that Magistrate Judge North had simultaneously served as both the mediator and the issuing judge of the *ex parte* Foskey Order, a dual role that underscores the extraordinary procedural irregularities and further evidences the impropriety of Morris Bart's conduct.

**FORMAL DISCOVERY SERVED**

47.On September 10, 2025, served written discovery on Morris Bart seeking documents and information relating to communications with Judge North that led to the Foskey Order (the, "Written Discovery").

48.In response to the written discovery, Morris Bart asserted sweeping objections, refusing to confirm whether any communications with Judge North occurred and invoking various state and federal rules of confidentiality that are inapplicable to this proceeding.

49.On October 13, 2025, MMA filed a Motion to Compel Morris Bart to respond to the Written Discovery, which is currently set for a hearing on November 14, 2025.

**SHOW CAUSE MOTION AND ORDER SETTING HEARING**

50.On October 1, 2025, the Debtor filed a Motion for an Order to Show Cause Morris Bart, LLC and Mr. Morris Bart.

51.On October 3, 2025, this Court entered an *Order Setting In-Person Hearing* requiring both

Morris Bart and Mr. Bart to personally appear and explain why they should not be held in contempt or otherwise sanctioned for violating the Injunction (the **"Order Setting Hearing"**).

52. On October 3, 2025, the Debtor sent Morris Bart a Second Request for Interrogatories which included one interrogatory seeking information regarding all devices, phone numbers and service providers used by Morris Bart to communicate with Judge North regarding the Foskey Order (the **"Second Interrogatory"**)

53. On October 15, 2025, Morris Bart filed an Appeal of the Order Setting Hearing (the **"Appeal"**) and simultaneously filed a Writ of Mandamus (the **"Mandamus"**).

**EMERGENCY FILINGS WITH JUDGE NORTH THAT VIOLATE THE AUTOMATIC STAY**

54. On October 13, 2025, ten days after entry of the Order Setting Hearing, counsel for Morris Bart sent an email to Magistrate Judge North attaching the Order Setting Hearing and the Second Interrogatory, asserting that these materials "directly involve settlement proceedings that Your Honor presided over in the subject case pending in the United States District Court for the Eastern District of Louisiana." (**"First Email"**). *(Exhibit A)*

55. That same day, Morris Bart filed a Motion for Protective Order in the Eastern District of Louisiana before Judge North in the Foskey Case (the "**Motion for Protective Order"**) and attached a Memorandum in Support, which was incorporated into the Motion. *(Exhibit B)*

56. In the Motion for Protective Order, Morris Bart requested that Judge North prevent discovery from Morris Bart relating to the mediation in the Foskey Case, including the testimony, information, and documents sought by the Debtor in the Second Interrogatories.

57. In addition to seeking a protective order, Morris Bart sought to have Judge North award it reasonable attorney's fees and costs and requested that the Debtor and its counsel be sanctioned for pursuing the requested information.

58. On October 13, 2025, Morris Bart also filed a pleading titled "Ex Parte Motion to Expedite Consideration of Motion for Protective Order," seeking to have the Motion for Protective Order heard on an expedited basis and to compel the Debtor, a party outside of Judge North's jurisdiction, to appear

in the Eastern District of Louisiana (the "**Ex Parte Emergency Motion**"). *(Exhibit C)*

59. Morris Bart did not seek relief from the Bankruptcy Court prior to any of these actions, including a) emailing Judge North; b) filing the Motion for Protective Order; or c) filing the Ex Parte Emergency Motion, demonstrating a deliberate effort to evade the automatic stay.

60. On October 14, 2025, Morris Bart's counsel emailed Judge North a second time, informing him that the Debtor had filed its Motion to Compel, and attached the pleadings for Judge North to review (**"Second Email"**). *(Exhibit D)*

### MORRIS BART'S ATTEMPTS TO AVOID THE BANKRUPTCY COURT'S JURISDICTION AND LITIGATE IN THE EASTERN DISTRICT OF LOUISIANA

61. The sending of the First Email and the Second Email to Magistrate Judge North, together with the filing of the Motion for Protective Order and the Ex Parte Emergency Motion, constitutes yet another audacious *ex parte* action that flagrantly disregards the Bankruptcy Court's jurisdiction and the automatic stay.

62. These actions represent a continued, deliberate pattern by Morris Bart to evade this Court and obstruct its authority. Below is a list of pleadings filed by Morris Bart in furtherance of this scheme to avoid the Bankruptcy Court's jurisdiction:

   a. On August 12, 2024, Morris Bart filed a Motion to Dismiss the Pending Adversary and sought alternative relief to transfer venue to the Eastern District of Louisiana. This motion was denied by the Court.

   b. On September 4, 2024, Morris Bart filed a Motion to Transfer the Debtor's Underlying Bankruptcy Case to Louisiana. This motion was also denied by the Court.

   c. On February 26, 2025, Morris Bart filed its Response in Opposition to the Debtor's Motion to Refer Pre-Trial Matters to Chief Bankruptcy Judge Rodriguez (Case No. 4:24-cv-04446: ECF No.18). MMA's Motion to Refer was granted by the District Court.

   d. On June 13, 2025, Morris Bart filed a Motion for Reconsideration of Judge Hanen's

    Order Granting MMA's Motion to Refer Pretrial Matters to Chief Bankruptcy Judge Rodriguez. This motion was denied.

 e. On September 30, 2025, Morris Bart filed a Motion in the District Court for Certification of Question of Law to the Louisiana Supreme Court (Case No. 4:25-cv-04059; ECF No. 6).

 f. On October 15, 2025, Morris Bart filed a Writ of Mandamus.

63. In total, Morris Bart has filed eight separate pleadings, each designed to evade the Bankruptcy Court's jurisdiction, demonstrating a deliberate and persistent pattern of forum shopping and blatant disregard for this Court's authority. This repeated attempt to circumvent the Bankruptcy Court directly underpins the Debtor's claims that Morris Bart's *ex parte* communications and filings constitute willful violations of the automatic stay, as they seek to interfere with property of the Debtor's estate and the Debtor's rights without authorization.

## CAUSE OF ACTION #1 – VIOLATIONS OF THE AUTOMATIC STAY

64. The Debtor asserts that Morris Bart Law violated 11 U.S.C. § 362(a)(3) by filing the Motion for Protective Order and the Ex Parte Emergency Motion (collectively, the **"Ex Parte Louisiana Motions"**) and sending the First and Second Emails to Magistrate Judge North, all of which were undertaken in direct violation of the automatic stay.

65. Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Seeking attorney's fees, sanctions, and protections from Magistrate Judge North, clearly falls within the scope of § 362(a)(3), as such actions constitute an attempt to exercise control over property of the Debtor's bankruptcy estate and obtain possession of property of the estate.

66. Morris Bart's actions in requesting that Judge North shield it from disclosing information necessary for MMA to pursue its claims against Morris Bart constitute a direct attempt to interfere with the Debtor's property rights in the bankruptcy estate. These claims,

and the Debtor's ability to enforce them, are unquestionably property of the estate. By attempting to preclude the Debtor from asserting its rights, Morris Bart sought to exercise dominion over estate property without authorization.

67. Morris Bart was fully aware of the automatic stay at the time it filed the Ex Parte Louisiana Motions and sent the two emails to Judge North. Morris Bart has been actively litigating against MMA since the inception of the Debtor's bankruptcy case. Despite this knowledge, Morris Bart willfully ignored the automatic stay.

68. Morris Bart, represented by two separate law firms in this bankruptcy case, made no attempt to seek relief from the automatic stay before initiating the Ex Parte Louisiana Motions or communicating directly with Judge North, demonstrating a deliberate and knowing violation of the automatic stay.

69. Morris Bart is a well-established law firm with extensive experience in bankruptcy and litigation matters and should be held to the highest standard of compliance with the automatic stay. Its repeated and deliberate violations constitutes egregious bad faith and warrant strict judicial scrutiny.

70. As a direct result of Morris Bart's filings and emails, the Debtor has been forced to initiate this new Adversary Proceeding to address the intentional violation of the automatic stay. These actions have caused actual damages, including, but not limited to costs for filing this lawsuit and attorney's fees.

71. Pursuant to 11 U.S.C. § 362(k), the Debtor is entitled to recover actual damages, including costs and attorney's fees, from Morris Bart for its willful and intentional violations of the automatic stay.

72. Although Section 362(k) provides for individual recovery, courts in this district have employed their civil contempt powers under section 105(a) to address automatic stay violations, including damages, fees and punitive damages, when the plaintiff is not an individual. *Sanchez v. Ameriquest Mort. Co. ( In re Sanchez),* 375 B.R. 289, 309 (Bankr. S.D.

Tex. 2007).

73. Under Section 105(a), a bankruptcy court may issue any order that is necessary or appropriate to carry out the provisions of this title.

74. Here, Morris Bart's intentional violation of the automatic stay warrants the Court's intervention to determine the violation and utilize its equitable powers under Section 105(a) to enforce Section 362.

75. The Court also possesses the authority under Section 105(a) to impose sanctions for civil contempt or as part of its equitable powers. As noted by the Fifth Circuit, "Judicial sanctions in civil contempt proceedings may, in proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Sanchez v. Ameriquest Mort. Co. ( In re Sanchez),* 375 B.R. 289, 309 (Bankr. S.D. Tex. 2007) (citing *American Airlines Inc. v. Allied Pilots Ass'n,* 228 F. 3d 574, 585 (5th Cir. 2000).

76. "The automatic stay is a self-executing injunction, and therefore for contempt purposes it constitutes an order of the bankruptcy court." *Sanchez v. Ameriquest Mort. Co. ( In re Sanchez),* 375 B.R. 289, 309 (Bankr. S.D. Tex. 2007)

77. Consequently, the Debtor seeks actual damages, as well as appropriate sanctions against Morris Bart for its intentional and willful violations of the automatic stay.

Dated: October 31, 2025

                                                  Respectfully submitted,

                                                  By: */s/Miriam T. Goott*

                                                  Miriam T. Goott
                                                  SBN #24048846
                                                  COUNSEL FOR DEBTOR

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208-1301
Phone (713) 956-5577
mgoott@walkerandpatterson.com